Good morning, Your Honors. May it please the Court? Timothy Coates on behalf of the City of Santa Rosa Defendants. We've had the benefit of an opening brief and a reply. There's been a lot of briefing on this case. At the outset, I'd like to start with the point Judge Henderson, where I think he took a misstep, which was whether or not Mr. Ruiz fell within 14602.6 as an unlicensed. Counsel, before you begin, did you intend to split time? We are splitting time. I'm taking seven and a half minutes. I'm mindful of the clock. No, no. Seven and a half minutes on the clock. That never works. I'm mindful watching the clock, but it doesn't keep time that way. That never works. We watch the other counsel panicking as you go over time. So we're going to avoid that by putting seven minutes. Seven and a half minutes, right? All right. Okay. We're going to put that on the clock. Otherwise, I don't be mindful. I'm sorry? I was going to be mindful of time. Well, it's always intended that way, but it very rarely works out. And I'll try to keep two minutes for a while, so I'm still going with my five. In any event, I think the misstep is with respect to whether Mr. Ruiz fell within 14602.6A to begin with, whether he was a licensed driver. And the district court found that, well, he had a license at one point in Mexico and no longer valid. That was enough to take him out of the statute. We have considerable argument in our papers as to why we think it's a matter of statutory construction. That is incorrect, that the problem that was being addressed by the legislature in 602.6, as well as companion statutes, was unlicensed drivers in California. But doesn't it say unlicensed by including a foreign jurisdiction, though? Well, but even if you look at Vehicle Code Section 310, which is where the district court kind of got this from, it talks about a vehicle for which it is currently licensed. And I think the is in the Vehicle Code in 310 is what makes the difference, because that tells you you need a current valid license at least somewhere, and I think California. A vehicle that's currently licensed or an individual who is currently licensed? You have a license for a vehicle which is, you can apply, the is is in the statute. It talks about it being current, and that's in Section 310. But is there a difference between a vehicle being currently licensed and a driver being currently licensed? Yeah. Is licensed to drive the vehicle in question. It's is licensed to drive. It pertains to the person, not to the vehicle. Vehicles are generally registered with a license following for that. That's what 310. But why would that terminology be used, currently licensed vehicle? Well, it's not licensed. You are licensed to drive. I thought you said I thought you said. No. The point is under 310, and I think we make the point in our brief fairly clearly, that when you're talking about a current license, you are, you, is licensed to drive the vehicle in question. That's how 310 reads. That's why it talks about current licensing, and indeed it would make very little sense for the legislature to say, well, as long as you had a license at any time, okay to drive. That's simply not what this legislation was, was pertaining to. So I think it's just wrong that Mr. Ruiz does fall within 14602.6a. Mindful, that doesn't get me over the next hurdle right away, which is the Brewster case, and I think we do have some factual distinctions here, particularly with respect to Mr. Ruiz, as opposed to the plaintiff in the Brewster case. In the Brewster case, of course, the person who was not licensed was not the owner of the vehicle. Here, Mr. Ruiz is the owner. He was unlicensed. Repeatedly unlicensed. I would say he is exactly the person to whom this kind of provision is directed. Counselor, even if we agree with you regarding the initial detention, how does that help you with the extended detention? Because I think it provides the justification for the extended detention. I think in our briefing we talk about that. We depart from Judge Henderson in terms of his not taking into account what we consider the legislative findings about the dangers for unlicensed drivers. I think it's different here because the nature of Mr. Ruiz's violations. This is someone who is repeatedly driving without a license. In fact, the officer, in exercising his discretion here, made that a major point. It was because he had been repeatedly cited for driving without a license. So I think factually, yes. Each case we decide on what the police officer finds as to the extent you can keep the car away from the people who own it? Well, that's his – that was his ground for citing him and impounding under this statute. It then eventually goes to the administrative hearing where, because Mr. Ruiz is repeatedly not licensed, it is held for the entire 30 days. Well, I understand if the person doesn't have a driver's license, you have to get them off the street. But that's a little different from imposing a 30-day restriction. It seems to me that there may be reasons in many cases they can do it in less than 24 hours. What's the justification of 30 days in every single case? Well, I think that the evidence here is that in some cases they don't hold for 30 days under the policy of the city. I mean, I think that was what the evidence was. He was held. But they can hold it for 30 days. They can hold it for 30 days. They can hold it. Under any circumstance. They can hold it. But in fact, the city – Isn't that a seizure? But the city exercises discretion. The hearing officers release – Is that a seizure? It is. It is. There's no question. I mean, under the courts, under Brewster, certainly the court has held that. But I'm just pointing out that in this case the determination was made on the fact that this is a gentleman who is a repeated unlicensed driver. There are different circumstances. As I get down to some time for rebuttal, I want to turn to two others. Let me see if I understand. Sure. The seizure would be unconstitutional, right? Could be unconstitutional. Could be, yes. So then we're going to determine what the police officer thinks at the point of seizing the car as to whether it will be an unconstitutional seizure, and it will be fully under him with no review. Bingo. Well, it stipulated here the initial seizure. That seems to be kind of doing away with the constitutional right of protection under the Fourth Amendment based upon what the police officer thinks at the time they grabbed the car. Well, two points. One, the initial seizure is not contested here as community caretaking. That was part of the stipulated facts. It's talking about justification for the ongoing seizure. The officer puts it in the ballpark by impounding under this statute, and he exercised that discretion writing it down because of the repeated violations. When Mr. Ruiz comes in, it's held for 30 days. Again, because he is a repeated violator, I think that's slightly different than in Brewster. The last point I wish to make is on the 52.1 claim. This Court's case law has changed substantially. It has adopted the Cornell decision in the Reese v. County of Sacramento. I believe that's actually beneficial for a defendant here because it incorporates the intent requirement. I think it's difficult to say there's an intent to violate rights in the sense that is talked about in Reese and Cornell when you have a vehicle seized pursuant to what was then viewed as a valid California statute. Counsel, is it your position then that the 30 days, the continued detention is made on a case-by-case basis? I think it was here. I mean, I can only deal with the facts I have here. I take the Court's point, though. As a matter of policy, because we're talking about the policy of the city. As a matter of city policy, were the decisions to retain the vehicles made on a case-by-case basis? The evidence is that the city policy, that they did vary the detentions. Where in the record can we look to verify? Can I finish my question? I'm sorry, Your Honor. Where in the record may we look to confirm that these decisions were made on a case-by-case basis? I will look again, Your Honor, because I think this was part of what Judge Henderson talked about also in terms of the lack of the inappropriateness of class certification. It's in portions of that where he talks about that, that the city does hold for different periods of time. That's one of the reasons why he found it difficult to make this a class. Well, but not for that reason. For reasons of other reasons. Correct. But I think that's where the evidence is. But I take your point. Thank you. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. My name is Ann Keck, and I represent the County of Sonoma, the Sheriff's Office, and Sheriff Freitas. The county's position differs slightly from the city's position, so I want to make sure that the Court understands that we are actually taking on, in our statement of issues and brief, the issue that there was no Fourth Amendment violation in this situation for a couple of different reasons. And the primary reason is something that is consistent with the Brewster case, because I would be remiss if I didn't deal with the elephant in the room, that is, Brewster's decision that an extended detention can implicate the Fourth Amendment. And to be honest, Your Honors, we have no qualms with the general statements of law that are contained in the Brewster case. Most specifically, Judge Kaczynski, in that case, said that a Fourth Amendment seizure must comport at all times with the government's justification for the seizure. I mean, that's just basic Fourth Amendment law. You cannot, the government cannot intrude on somebody's property interests more than necessary to satisfy the reason for the government's intrusion. So in this case, we have a very interesting situation because we have two different types of law coming together at the same time. I would submit that for purposes of the application of 14602.6, which is the 30-day impound section, the community caretaking doctrine is irrelevant. The purpose of the statute is not to provide safety on the scene at the time. The purpose of the statute, in the infinite wisdom of the California legislature, is to deter unlawful driving. In fact, California has set out a comprehensive statutory scheme that includes not only these temporary forfeitures, but also permanent forfeitures based on serious decisions of violations of public safety. And so at the time, yes, of course the seizures in both of these instances complied with the community caretaking doctrine. Initially. Initially. But that's irrelevant because of the statute that the officers used to impound. The statute was not to protect the scene. The statute was to impound them pursuant to this legislative scheme that is to protect against unlawful driving and the things that it causes. And the legislature not only made specific findings in the statutory scheme, but in your record is included a study that was done four years after enactment of the 30-day impound statute. But counsel, the legislative scheme can't trump the Fourth Amendment. Of course not. But in this situation, it demonstrates that because the purpose is deterrence, we don't need to have every single person reviewed on a case-by-case basis. In other words, the court should, and I invite the court to look at the statutory scheme because that's what local law enforcement officers are bound to apply. So is it your view that class action certification was appropriate? No. You don't have to look at each individual. That's the prototype of a class action. But if we're looking at a facial challenge, you're facially challenging the State law, not a county policy. We are facially challenging whether the California government has set forth an appropriate procedure to deprive people for 30 days. It's a temporary forfeiture. There's no question about it. Have they set enough justifications under the code to allow law enforcement officers appropriate guidance to know when? But the question is how the city and the county have interpreted and applied that law. And I would submit that the court, the lower court, did say that your interpretation of the statute is wrong. I don't think it applies to people who have expired foreign driver's licenses. However, as this Court knows, the U.S. Supreme Court came out with the Hine v. North Carolina decision that said reasonable mistakes of law do not equate to a Fourth Amendment violation. So we have a — this case was brought on the assumption — no, the allegation that law enforcement agencies statewide are misapplying the 30-day impound statute to people with expired foreign driver's licenses. There are many agencies who did the same. That was only for the initial detention. But the continued detention, it has little to do with the license in effect because someone else could drive the car. The person could have gotten the license renewed in that time. So the touchstone of the Fourth Amendment is reasonableness. And that's why I'm having a difficult time accepting your argument that because the legislature has made — has done this study and has — in these legislative findings, that that per se makes every prolonged detention reasonable. Well, keep in mind, I think we have to look at the entire legislative scheme. So it doesn't say in every case, thou shalt — if you use your discretion in invoking the 30-day impound statute, thou shalt hold all vehicles for 30 days. It doesn't say that. It has a list of exceptions to return it. One of those exceptions is the mitigating circumstances exception. And the California courts have interpreted that to say if the person is not culpable, in other words, if the purpose of the statute is not being met by seizing the vehicle for the 30 days under these circumstances, then our statutory scheme isn't working. It doesn't serve to deter any conduct. You must release this vehicle to the person early. Could I ask a question that's bothering me? I know your time is running out, and that has to do with Brewster. Judge Felton Henderson rejected all of your arguments in a very persuasive statement. We've already passed upon Judge Felton Henderson's determination when we said in a published case that it was an opinion that was well-reasoned and thorough. What do we do with that? I haven't had this come up before in the brief time I've been on this Court. Well, Your Honor, I haven't had it in my much shorter time being an attorney. But we had a three-judge panel publish a case saying that the opinion of Judge Henderson was thorough and well-reasoned and approving it. Now, do we have to go in bank then to get your decision? No, Your Honor, you don't. As Your Honors know, the only thing that can be decided in a case is the issues that are raised in the case. So the issue that Brewster decided is that you can have a Fourth Amendment violation for a continued detention if the government's reason for holding, reason for detaining the property has ceased to exist. And that is the issue. That is one of the issues that Judge Henderson decided. But remember, Brewster was in a procedural posture of a motion to dismiss. We're at final judgment. So we have an inordinate amount of information, including information that the Brewster court did not have, which was that the court said the city did not provide a justification for the 30-day impound. Once community caretaking was done, because the vehicles were moved off the street, there was no justification aside from we're applying the statute. Counsel, as an analytical matter, if Brewster says that the continued detention of the vehicle was a warrantless seizure, what exception to the warrant requirement authorized that warrantless seizure? It is that it is a reasonable search because all reasonable, pardon me. It's a seizure. I misspoke, pardon me. It's a reasonable seizure. How do we know that? We do the balancing test. Under what exception to the warrant requirement? The basic fundamental premise is that it needs to be a reasonable seizure. So the reasonableness of the seizure, let me give you an example. But typically when we've analyzed warrantless seizures to determine whether or not the Fourth Amendment has been violated, we look for an exception. Exigent circumstances, emergency, community caretaking. What exception as a matter of law justifies the continued detention of these vehicles? The warrant exception rules do not apply in this non-criminal context. The rules that apply are those of civil forfeiture. The civil forfeiture rules say that, and I'll cite to Venice v. Michigan, the civil forfeiture rules say that we don't have to have a warrant exception. We have to have a public policy that says we want to deter crime. We seize the property. And if you can – and if the statutory framework protects the person's constitutional rights, then the government has the right because it's reasonable. And why? Let me get the question. Did Brewster analyze that case this way? No. It never got to that point. And here's why. The court said that the City of Los Angeles didn't proffer a reason, a justification for the 30-day hold. Our justification is that, pursuant to the State of California's findings, the 30-day impound statute saves lives. It has been demonstrated in the studies by the DMV and the National Highway Traffic Safety Administration that people who've had their vehicles impounded for 30 days cause 25 percent fewer vehicle accidents. And if they had their vehicles impounded two times or more, they cause 38 percent fewer accidents, which means that the government interest is saving lives. Counsel, you've exceeded your time. Thank you. All right. Thank you. Good morning, Your Honor. Donald Cook for plaintiffs. I think the point that Ms. Heck just raised makes the point even clearer on why Judge Henderson erred in not finding commonality. The justification for the 30-day impound is a class-based justification. It's not an individual determination the city made as to each vehicle. It's the fact that the driver of the vehicle met the city or the county's requirement for being an unlicensed driver, number one, and number two, they met the definition of unlicensed driver within the meaning of how the city interpreted 14602.6, and number three, 14602.6 requires a 30-day impound. Therefore, the car gets impounded for 30 days. That's why the ruling by Judge Henderson that there needs to be a case by case determination erred. The city is not making, the city and the county, do not make a case by case determination here. They are applying a policy across the board to those drivers of vehicles that meet the city's definition of unlicensed driver based on how they interpreted 14602.6. So to use a series of cases to strip search cases, Fourth Amendment claims, those cases get decided based on whether the class justification for searching the prisoners is justified or not, and that generally determines the outcome in the cases. Some cases you can do a class-based justification for searching of prisoners. In other cases, you cannot. We have the same common issue here. It's a class-based justification. It was not an individualized determination. And because it's a class-based justification for the 30-day impound, it's appropriate to find a common issue that predominates. I thought that you had framed your challenge below really as an as-applied challenge as opposed to a facial challenge to the validity of the State statute. Am I wrong about that? We were not attacking the face of the statute per se. What we were attacking is how the city and the county were applying it. And their application of it was pretty straightforward. They added two twists, one of which is they did not consider an issuance of a foreign license a driver's license within the meeting, and the second twist they added to it is they would not apply the .6 impound unless there was a prior conviction of driving without a license. So that's essentially the as-applied challenge. But, again, they applied those criterias across the board to all drivers. But they're saying that they don't necessarily keep the car for the whole 30 days, and if someone comes in and makes a compelling case for why the deterrent purposes of the statute wouldn't be met on those individual facts, that they then release it early. So why? Are you resisting? I'm trying to just keep where you are. Sure. Right. A point that Judge Henderson noted in finding no commonality. The question of how long the car was actually held is only a question of damages. You can still certify the class. You can even still certify a damages class because you can determine with mathematical precision how long each vehicle was actually held. Well, I'm just trying to figure out where you are fighting them and where you're not. Are you saying that after the original justification for the seizure off the street is out of the way, the community caretaking function, all that has been disposed of, and so now the city or the county is just holding on to the car, is your position that they can't hold it even a single day? Just period? Like the entire basis for the statute is invalid under the Fourth Amendment? Or are you saying that, like let's say in a case where there's just severe aggravated facts, the person, you know, a repeat offender and that kind of thing, are there circumstances where the holding it for 30 days would be justified in your view or just never? That's what I guess I'm trying to figure out. The justification they've asserted for the 30-day impound would not apply to any vehicle, the owner of any vehicle that was impounded for 30 days, first of all. That's the first point. Because? Because their justification of deterrence slash punishment is invalid? For a warrantless seizure, yes, it is invalid. But why isn't it like the Benes civil forfeiture? Glad you brought that up. The significant thing about Benes v. Michigan is there was a judicial review process as to whether or not to forfeit the woman's vehicle. It was not the policemen say so as to whether or not there should be a forfeiture. It was based upon a judicial review process. She got notice as to what was the basis for what was a civil forfeiture, which according to Justice Thomas' concurrence in a 5-4 decision, you know, there is this distinction between civil forfeiture and criminal forfeiture. And because it's a civil, it's going to be okay as against the excessive fine challenge. But significantly, there was a judicial review process. The 30-day impounds that occur here, there's no judicial review ever, pre or post. Well, there's the review by CISA. Oh, the same agency that seizes the vehicle. You can go to the – No, no, no. I know. And I agree. That wouldn't satisfy due process or maybe the Fourth Amendment. But can't you – if you get an adverse ruling from that review board, can't you get into court in some fashion? You can't. There is a process for writ of mandamus. You can file it in the Superior Court to challenge it. So why doesn't that count? Because by the time you have – take a look at what happened here with Mr. Ruiz when he did the writ proceedings. He didn't get an order until like seven months later. I mean, there is no kind of effective judicial review when the officer makes the decision or in these cases when the police agency makes the decision we're going to do a 30-day impound. That's the policeman's decision. There's no effective judicial review. Okay. But why isn't that a due process concern rather than a Fourth Amendment concern? It is a due process concern. We did raise it in the court below. Of course, we did not raise it on this appeal. But it is a – Why is it a Fourth – all that's before us is the Fourth Amendment. And that's why I'm asking why isn't it rather than being a Fourth Amendment concern, why isn't it in the due process box? Because that's what you – I would – What you were just describing sounds to me like a due process problem. The judicial review mechanism on the back end of the seizure is not robust enough to satisfy due process. I'm – I say it's in both boxes. However, of course, I did not raise – plaintiffs did not raise the due process issue before this court. That said, in response to their argument that the statute authorizes this 30-day impound, it's justified because of all the legislative findings that counsel refers to, then I think it's appropriate to go back and look at, well, wait a minute, where's the judicial review in any of that? There is none, obviously. Then it's appropriate to look at the due process problem in responding to their argument about justification based upon the statute, based upon legislative findings, and all those other things they raised. So – You mean you can raise the due process issue today, never having discussed it in the district court? I'm saying in response to their – No, I'm just – Oh. Can you raise that as an issue that was never raised in the district court? I mean, you can make this argument. That's different from saying that you can raise it as an issue that we have to decide. The short answer to your question, as it's framed, is no, I cannot ordinarily. However, just to correct a premise in your question, Judge Wallace, we did raise the due process issue in the trial court here. He ruled against – Oh, I misunderstood. I thought you said you did not raise it to us. No. We did not raise it – That's correct. So, but if there's going to be given any credence to this argument of, well, the statute justifies this seizure that somehow makes it reasonable, this statute and these legislative findings, then I think it's appropriate to say, wait a minute, where's the judicial review in this statute? Where's the judicial review in these findings? That's my point. Okay. But let's put aside – let's say that there was an extremely robust judicial review process on the back end that allowed you to get into court within a matter of 48 hours. Okay. Let's just say we had that. Sure. Are you nonetheless saying that this deterrent rationale that the city and I guess the county are asserting is just not valid? No. Like, it's not okay to take someone's car away for 30 days in order to deter them from driving without a license? I think it's within the police power of the legislature to pass a law that says for a certain type of unlicensed driving, we're going to impose a punishment. Oh. Okay? Okay. Call it deterrence. Call it punishment. You're saying that that is okay? That's a police power. Okay. And they have it and they can do it. However, it's not the policeman's call to impose that punishment or deterrence. That's going to be made by a court. That's the way it's done in this country. That's the way it's supposed to have been done ever since about 1215 when he puts a sword through the king's neck. It's the policeman's job to enforce the law. It's the court's job to determine whether or not there is a violation of law that requires punishment. And the problem with this rationale they use to justify a 30-day impound, it's all based upon the decision of the Santa Rosa Police Department and the decision of the Sonoma County Sheriff's Department to punish, deter, whatever you want to call it, these drivers. Okay. But then that's what I guess I'm confused about your position with respect to Class Cert. Because you're not saying that this seizure from a Fourth Amendment standpoint is always going to be invalid in every case. I hear you saying that there will be plenty of cases where, yeah, they can hold onto the car for 30 days. The defect being that there isn't a back-end judicial review mechanism. Incorrect. Okay. So what am I missing? Because of how they apply 14602.6, which is you meet your criteria, boom, you get a 30-day impound, period. That is going to be a Fourth Amendment violation in every case. It's a class-based justification based on deterrent, and I can sense another question coming at me. Yes. I'm ready. I was going to ask you where in the record we may look to confirm that the policy in every single case imposes a 30-day detention of the car. Well, it's in both the written policy of both the Sonoma County Sheriff's Department and Santa Rosa. I think it's section 504. But does it say a 30 the 30-day detention is mandatory or may? I thought it was permissive, which kind of takes away from your argument. No. Once they elect to do a .6 impound, it's permissive as to whether or not you do a .6 impound. You could do what we call catch and release, 22651. Your pick, even though the guy qualifies under .6, you get to choose still. But once you do the .6, it's mandatory 30-day impound unless the owner establishes one of the exceptions in the .6 statute. Right. So there's some play there. There is some play. Which means that class-action treatment may not be the appropriate way to determine the enforcement of it. I would disagree. For this reason, for the owners we're talking about, vehicle owners, we're all talking about people who only possible exception that would apply under the statute would be the mitigating circumstances exception. You come in and you plead your case of hardship and, you know, if you catch the cop on a good day, maybe you get your car back. Maybe not. That's uniquely individual. What? That's uniquely individual. I'm just saying that that's true. However, that is not the basis for their decision to impound. If you meet all the criteria, boom, your car is held. Mitigating circumstances are not a factor in any of these cases where they find that the person meets the criteria of the statute based on how these agencies interpret and apply the statute. And you saw it in the case where Mr. Sandoval was trying to get the car back. And they had the hearings and stuff. Well, wait a minute. He's an unlicensed driver, never been licensed as far as we're concerned. He meets the criteria of the statute. He doesn't get his car back. So it's your position that the city and county have never released a vehicle in fewer than 30 days? Well, never when the persons meet the criteria under the statute as to how the county and Santa Rosa apply it. You know, if it turns out that the officer was. . . That's a pretty fuzzy answer. Well, I don't mean to try and be fuzzy. What I'm trying to say is that you meet the criteria of being an unlicensed driver, never been licensed. You have the prior conviction. It's a 30-day impound. End of story. The only exception is that, well, if you come in and now show that you're a licensed driver, then they go to that statutory provision that says the driver is now licensed, then you have to release the car. The problem I have with this particular issue is there's nothing in the record one way or the other about whether or not the county and the city invariably keep the cars and don't release any. So that's very difficult. I would say that the appropriate response is to vacate the ruling because the rationale for finding no commonality, this requirement that you have to make an individualized determination, I submit that was a legal error because there is no individualized determination made by the agencies when they decide the impound. I would say vacate the ruling denying class certification and remand for reconsideration in light of Brewster and in light of additional facts, as Your Honor has just laid out, that may be brought out to show whether or not they really do any individualized determination. Everything we've seen in this case, they don't. I know I'm 35 seconds over my time. Yes. Just briefly on 52.1, I agree with Mr. Coates. Yeah, the law has changed much to the better for the plaintiff in this case. Judge Henderson dismissed the 52.1 because he thought there had to be a requirement of, you know, separate threats, intimidation, or coercion. That's not the law. I submit that the ruling on the dismissal of 52.1 needs to be vacated and remanded to the trial court to reevaluate in light of the Reese decision by this court and the Rodriguez decision. All right. Thank you, counsel. Mr. Coates, you had some time remaining. We'll give you one minute for rebuttal. Thank you, Your Honor. Speaking to the class certification issue, I think it's fuzzy because, as Judge Henderson noted, this was kind of a moving target in terms of defining the class. The duration of hold was not part of the class definition. I think that's why there's less than an ideal record on that. Second, he thought there were circumstances, individual circumstances, in which community caretaking might be valid post-initial seizure depending upon what the person's driving record was at the time. And he even talked to the city attorney, I think it's in the transcript of the hearing where he talked about how you can reconstruct in some cases that they're not being seized just because of the unlicensed but because of other factors. And that's why Judge Henderson thought it was too individualized for a class certification. So that's why I think the state of the record is less than ideal. And I think plaintiffs put it there. Also, it's a rather unique circumstance. This is a case where we had liability determined as to individual plaintiffs and then backed into the class action. I think that's another reason for the absence in the record of such evidence. As for the Bain claim, do you agree with opposing counsel that the change in law is beneficial? No, I don't think it's beneficial to the plaintiff at all. I think the Reese case is kind of clear in terms of you have to show some sort of malicious intent. There was excessive force that they thought a jury could go back and find that it was deliberately excessive. Here, this is a valid California statute viewed as complying with the Constitution. It's not exactly qualified immunity, but when you talk about intent, that makes a difference for 52.1. I just don't think they can show intent on this record. Thank you, counsel. Thank you to all counsel for your arguments in this case. The case just argued is submitted for a decision by the Court. The next case on calendar for argument is United States v. Riodico. I apologize in advance for renaming the defendant.
judges: Wallace, Rawlinson, Watford